## No. 23-8029

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

In re FTX TRADING LTD., *et al.*,

*Debtors.*

ANDREW R. VARA, United States Trustee for Regions Three and Nine,

*Appellant,*

v.

FTX TRADING LTD., *et al.*,

*Appellees.*

## JOINT OPPOSITION TO PETITION FOR PERMISSION FOR DIRECT APPEAL OF ORDER ISSUED BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

**SULLIVAN & CROMWELL LLP**
James L. Bromley
Brian D. Glueckstein
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile:  (212) 558-3588
E-mail:  bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com

**PAUL HASTINGS LLP**
Kristopher M. Hansen
Kenneth Pasquale
Isaac S. Sasson
John F. Iaffaldano
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
      kenpasquale@paulhastings.com
      isaacsasson@paulhastings.com
      jackiaffaldano@paulhastings.com

**LANDIS RATH & COBB LLP**
Adam G. Landis (No. 3407)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile:  (302) 467-4450
Email: landis@lrclaw.com
         pierce@lrclaw.com

*Counsel for the Appellees FTX Debtors
and Debtors-in-Possession*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-6600
Email:  mlunn@ycst.com
         rpoppiti@ycst.com

*Counsel for the Appellee the Official
Committee of Unsecured Creditors of
FTX Trading Ltd. et al.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rules 8012 and 8014 of the Federal Rules of Bankruptcy Procedure, FTX Trading Ltd., on behalf of itself and its affiliated debtors and debtors-in-possession (collectively, the "FTX Debtors"), states as follows based on information available to the FTX Debtors at the time of this filing:

1.    100% of the equity of Alameda Aus Pty Ltd. is owned by Alameda Research Ltd.

2.    100% of the equity of Alameda Global Services Ltd. is owned by Alameda Research LLC.

3.    100% of the equity of Alameda Research (Bahamas) Ltd. is owned by Alameda Research Ltd.

4.    100% of the equity of Alameda Research Holdings Inc. is owned by Alameda Research LLC.

5.    100% of the equity of Alameda Research KK is owned by Alameda Research LLC.

6.    There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Alameda Research LLC.

7.    100% of the equity of Alameda Research Ltd. is owned by Alameda Research LLC.

8.    100% of the equity of Alameda Research Pte Ltd. is owned by Alameda Research Ltd.

9.    99.9% of the equity of Alameda Research Yankari Ltd. is owned by Alameda Research Ltd.

10.    100% of the equity of Alameda TR Ltd. is owned by Alameda Research Ltd.

11.    100% of the equity of Alameda TR Systems S. de R. L. is owned by Alameda Research Ltd.

12.    100% of the equity of Allston Way Ltd. is owned by FTX Trading Ltd.

13.    100% of the equity of Analisya Pte Ltd. is owned by FTX Trading Ltd.

14.    100% of the equity of Atlantis Technology Ltd. is owned by Alameda Research Holdings Inc. Services Ltd.

15.    100% of the equity of Bancroft Way Ltd. is owned by FTX Trading Ltd.

16.    Approximately 52% of the equity of Blockfolio, Inc. is owned by Blockfolio Holdings, Inc.

17.    100% of the equity of Blue Ridge Ltd. is owned by Alameda Research Ltd.

18.    100% of the equity of Cardinal Ventures Ltd. is owned by Alameda Research Ltd.

19.    100% of the equity of Cedar Bay Ltd. is owned by Alameda Research Ltd.

20.    There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Cedar Grove Technology Services, Ltd.

21.    There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Clifton Bay Investments LLC.

22.    100% of the equity of Clifton Bay Investments Ltd. is owned by Clifton Bay Investments LLC.

23.    100% of the equity of Cottonwood Grove Ltd. is owned by Alameda Research Ltd.

24.    100% of the equity of Cottonwood Technologies Ltd. is owned by Alameda Research Ltd.

25.    100% of the equity of Crypto Bahamas LLC is owned by FTX Trading Ltd.

26.    100% of the equity of DAAG Trading, DMCC is owned by FTX Europe AG.

27.    There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Deck Technologies Holdings LLC.

28.    100% of the equity of Deck Technologies Inc.is owned by Deck Technologies Holdings LLC.

29.     100% of the equity of Deep Creek Ltd. is owned by FTX Trading Ltd.

30.     100% of the equity of Digital Custody Inc. is owned by West Realm Shires Inc.

31.     100% of the equity of Euclid Way Ltd. is owned by Alameda Research Ltd.

32.     100% of the equity of FTX (Gibraltar) Ltd. is owned by FTX Trading Ltd.

33.     100% of the equity of FTX Canada Inc. is owned by FTX Trading Ltd.

34.     100% of the equity of FTX Certificates GmbH is owned by FTX Europe AG.

35.     100% of the equity of FTX Crypto Services Ltd. is owned by FTX Trading Ltd.

36.     100% of the equity of FTX Digital Assets LLC is owned by West Realm Shires Financial Services Inc.

37.     100% of the equity of FTX Digital Holdings (Singapore) Pte Ltd. is owned by FTX Trading Ltd.

38.     100% of the equity of FTX EMEA Ltd. is owned by FTX Trading Ltd.

39.     100% of the equity of FTX Equity Record Holdings Ltd. is owned by FTX Trading Ltd.

40.     100% of the equity of FTX EU Ltd. (f/k/a K-DNA Financial Services Ltd) is owned by FTX Europe AG.

41.     100% of the equity of FTX Europe AG is owned by FTX Trading Ltd.

42.     100% of the equity of FTX Exchange FZE is owned by FTX Europe AG.

43.     100% of the equity of FTX Hong Kong Ltd. is owned by FTX Trading Ltd.

44.     100% of the equity of FTX Japan Holdings K.K. is owned by FTX Trading Ltd.

45.     100% of the equity of FTX Japan K.K. is owned by FTX Japan Holdings K.K.

46.     100% of the equity of FTX Japan Services KK is owned by FTX Japan Holdings K.K.

47.    100% of the equity of FTX Lend Inc. is owned by West Realm Shires Inc.

48.    100% of the equity of FTX Marketplace, Inc. is owned by West Realm Shires Inc.

49.    100% of the equity of FTX Products (Singapore) Pte Ltd. is owned by FTX Trading Ltd.

50.    100% of the equity of FTX Property Holdings Ltd. is owned by FTX Trading Ltd.

51.    100% of the equity of FTX Services Solutions Ltd. is owned by FTX Trading Ltd.

52.    100% of the equity of FTX Structured Products AG is owned by FTX Europe AG.

53.    100% of the equity of FTX Switzerland GmbH is owned by FTX Europe AG.

54.    100% of the equity of FTX Trading GmbH is owned by FTX Trading Ltd.

55.    Approximately 75% of the equity of FTX Trading Ltd. is owned by Paper Bird Inc.

56.    100% of the equity of FTX US Services, Inc. is owned by West Realm Shires Services Inc.

57.    100% of the equity of FTX US Trading, Inc. is owned by West Realm Shires Services Inc.

58.    100% of the equity of FTX Ventures Ltd. is owned by Paper Bird Inc.

59.    99.9% of the equity of FTX Zuma Ltd. is owned by FTX Trading Ltd.

60.    100% of the equity of GG Trading Terminal Ltd. is owned by FTX Trading Ltd.

61.    100% of the equity of Global Compass Dynamics Ltd. is owned by FTX Trading Ltd.

62.    100% of the equity of Good Luck Games, LLC. is owned by West Realm Shires Inc.

63.    100% of the equity of Goodman Investments Ltd. is owned by Alameda Research Holdings Inc.

64.    100% of the equity of Hannam Group Inc. is owned by Alameda Research LLC.

65.    100% of the equity of Hawaii Digital Assets Inc. is owned by West Realm Shires Inc.

66.    There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Hilltop Technology Services LLC.

67.    100% of the equity of Hive Empire Trading Pty Ltd. is owned by FTX Trading Ltd.

68.    100% of the equity of Innovatia Ltd. is owned by FTX Trading Ltd.

69.    100% of the equity of Island Bay Ventures Inc. is owned by Paper Bird Inc.

70.    100% of the equity of Killarney Lake Investments Ltd. is owned by Alameda Research Holdings Inc.

71.    100% of the equity of Ledger Holdings Inc. is owned by West Realm Shires Inc.

72.    100% of the equity of LedgerPrime Bitcoin Yield Enhancement Fund, LLC is owned by Ledger Prime LLC.

73.    100% of the equity of LedgerPrime Bitcoin Yield Enhancement Master Fund LP is owned by LedgerPrime Bitcoin Yield Enhancement Fund, LLC.

74.    100% of the equity of LedgerPrime Digital Asset Opportunities Fund, LLC is owned by Ledger Prime LLC.

75.    100% of the equity of LedgerPrime Digital Asset Opportunities Master Fund LP is owned by LedgerPrime Digital Asset Opportunities Fund, LLC.

76.    100% of the equity of Ledger Prime LLC is owned by Alameda Research LLC.

77.    100% of the equity of LedgerPrime Ventures, LP is owned by Ledger Prime LLC.

78.   Approximately 50% of the equity of Liquid Financial USA Inc. is owned by FTX Japan Holdings K.K. and approximately 50% is owned by third party investors.

79.   100% of the equity of LiquidEX LLC is owned by Liquid Financial USA Inc.

80.   100% of the equity of Liquid Securities Singapore Pte Ltd. is owned by FTX Trading Ltd.

81.   100% of the equity of LT Baskets Ltd. is owned by FTX Trading Ltd.

82.   100% of the equity of Maclaurin Investments Ltd. is owned by Alameda Research Ltd.

83.   100% of the equity of Mangrove Cay Ltd. is owned by FTX Trading Ltd.

84.   100% of the equity of North Dimension Inc. is owned by Alameda Research LLC.

85.   100% of the equity of North Dimension Ltd. is owned by Alameda Research Ltd.

86.   100% of the equity of North Wireless Dimension Inc. is owned by Alameda Research LLC.

87.   There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of Paper Bird Inc.

88.   100% of the equity of Pioneer Street Inc. is owned by West Realm Shires Inc.

89.   100% of the equity of Quoine India Pte Ltd. is owned by FTX Japan K.K.

90.   100% of the equity of Quoine Pte Ltd. is owned by FTX Japan Holdings K.K.

91.   100% of the equity of Quoine Vietnam Co. Ltd. is owned by FTX Japan K.K.

92.   100% of the equity of Strategy Ark Collective Ltd.  is owned by Alameda Research Ltd.

93.   100% of the equity of Technology Services Bahamas Limited is owned by

FTX Trading Ltd.

94.    100% of the equity of Verdant Canyon Capital LLC is owned by Alameda Research LLC.

95.    100% of the equity of West Innovative Barista Ltd. is owned by FTX Trading Ltd.

96.    100% of the equity of West Realm Shires Financial Services Inc. is owned by West Realm Shires Inc.

97.    There is no parent corporation or publicly held corporation that has been identified owning 10% or more of the equity of West Realm Shires Inc.

98.    100% of the equity of West Realm Shires Services Inc. is owned by West Realm Shires Inc.

99.    100% of the equity of Western Concord Enterprises Ltd. is owned by FTX Trading Ltd.

100.   100% of the equity of Zubr Exchange Ltd. is owned by Innovatia Ltd.

\*   \*   \*

In accordance with Federal Rule of Bankruptcy Procedure 8012, Appellee the Official Committee of Unsecured Creditors is a statutorily appointed entity pursuant to 11 U.S.C. § 1102(a)(1) and is not a corporation.

# **INTRODUCTION**

The FTX empire abruptly collapsed in November 2022 after it was revealed that Samuel Bankman-Fried and others had engaged in a vast conspiracy to defraud FTX's own customers. There is no debate the Chapter 11 Cases[1] that immediately followed present issues of fraud, dishonesty, incompetence, misconduct, and mismanagement—but the wrongdoing was perpetrated by past, not current, management. The FTX Debtors have at times described the state of affairs upon their arrival on the scene as more akin to a crime scene than an operating business. But the FTX Debtors have also made clear that a new, independent management team and Board of Directors is in place, led by John J. Ray, III as CEO and Chief Restructuring Officer of each of the FTX Debtors. The undisputed record reflects that Mr. Ray and the Board are qualified, independent, and working diligently with the Committee to investigate and illuminate their predecessors' wrongdoing.

Despite the exhaustive efforts of the FTX Debtors and the Committee to investigate all aspects of the fraud and thereby maximize creditor recovery, the U.S. Trustee demands that an examiner be appointed. He stands by that demand even though no economic stakeholder supports appointing an examiner and the

---

[1]   Terms not defined shall have the meaning ascribed to them later in this brief.

Bankruptcy Court has determined on a full evidentiary record that doing so would harm the FTX Debtors. Indeed, the Bankruptcy Court heard unrefuted testimony from Mr. Ray that an examiner's investigation would duplicate the ongoing investigations being conducted by the FTX Debtors, the Committee, and state, federal, and international government authorities. The Bankruptcy Court credited Mr. Ray's testimony that appointment of an examiner would be affirmatively harmful to the FTX Debtors for numerous reasons, including the resulting unjustifiable increases in cost, delay, and cybersecurity risk.

The U.S. Trustee did not—and still does not—attempt to challenge those findings. Instead, he insists that section 1104(c)(2) makes appointment of an examiner mandatory in every case where a debtor's debts exceed $5 million. Like every other bankruptcy court in the District of Delaware to consider this argument, the Bankruptcy Court here rejected the U.S. Trustee's interpretation of the statute. Undeterred, the U.S. Trustee advanced this appeal.

In truth, this appeal is the latest battle in the U.S. Trustee's policy crusade to divest bankruptcy courts of discretion to decide whether an examiner is appropriate under the specific circumstances of a chapter 11 case. Further to that crusade, the U.S. Trustee now petitions this Court to directly review the Bankruptcy Court's Bench Ruling and Order. But the Petition merely recites some of the criteria of 28 U.S.C. § 158(d)(2) without acknowledging this Court's discretion to exercise,

or decline to exercise, jurisdiction.  The U.S. Trustee provides no basis for granting such extraordinary relief.  Accordingly, the Petition should be denied for at least two reasons.

*First*, the U.S. Trustee cannot explain how a direct appeal would dispel confusion amongst the bankruptcy courts of this circuit or otherwise benefit judicial economy.  That is because there is no uncertainty among the bankruptcy courts in the District of Delaware about their discretion to appoint an examiner under section 1104(c)(2)—they have uniformly rejected the U.S. Trustee's argument that they are mandated to blindly appoint an examiner.  A handful of cases decided elsewhere do not create such uncertainty, and inter-circuit conflicts provide no basis for direct review by this Court.  For the same reasons, the U.S. Trustee cannot show that the Bankruptcy Court's Bench Ruling, which is consistent with the uniform weight of authority in this Circuit, is so incorrect that this Court can readily dispose of this appeal without the benefit of the district court's review.

*Second*, even if this Court evaluated the Petition solely by evaluating the certification criteria of 28 U.S.C. § 158(d)(2)—and it should not—the U.S. Trustee has failed to show that those factors support direct review.  This Court does not mechanically hear every appeal certified to it under section 158 raising any issue of law with no controlling circuit court decision.  Were that so, there would be no point to the discretion vested in it by statute to decline appeals meeting any of the

criteria set forth in 28 U.S.C. § 158(d)(2)(A). Rather than attempting to explain why the question of law raised in this case necessitates this Court's immediate attention, the U.S. Trustee argues at length the flawed merits of his appeal. Similarly, the U.S. Trustee asserts that the FTX cases generally are of public importance. But the relevant question is whether *this appeal* is a matter of public importance, and the answer to that question is no. Because the U.S. Trustee provides no compelling reason for this Court to directly review his appeal, the Petition should be denied.

If this Court is nonetheless inclined to permit a direct appeal, it should deny the U.S. Trustee's request for expedited briefing and argument. The only support that the U.S. Trustee provides for expedited treatment is self-serving speculation that appointing an examiner might somehow "benefit the preparation of a chapter 11 plan." (Pet. at 18.) No basis exists in the record of this appeal to conclude that that is true. Rather, the evidence credited by the Bankruptcy Court supports the opposite conclusion, explained in the Bench Ruling, that the appointment of an examiner would serve no purpose on the facts here and would be affirmatively harmful.

## BACKGROUND

### A.    The FTX Debtors and Their Chapter 11 Cases

On November 11 and November 14, 2022 (as applicable, the "Petition Date"), the FTX Debtors filed with the United States Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court") voluntary petitions for relief under title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"). The FTX Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Joint administration of the FTX Debtors' bankruptcy cases (the "Chapter 11 Cases") was authorized by the Bankruptcy Court by entry of an order on November 22, 2022. (Bankr. Ct. ECF No. 128.) On December 15, 2022, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors in the FTX Debtors' Chapter 11 Cases (the "Committee") pursuant to section 1102 of the Bankruptcy Code. (Bankr. Ct. ECF No. 231.)

### B.    The U.S. Trustee's Motion to Appoint an Examiner

On December 1, 2022, the U.S. Trustee filed the *Motion of the United States Trustee for Entry of an Order Directing the Appointment of an Examiner* (Bankr. Ct. ECF No. 176) (the "Examiner Motion") seeking an order appointing an examiner pursuant to section 1104(c) of the Bankruptcy Code. The U.S. Trustee advanced two arguments in support of the appointment of an examiner: (1) "appointment of an independent examiner would be in the interests of the Debtors' creditors and other parties in interest in the Debtors' estates, consistent with Code section 1104(c)(1)," and (2) "[t]he appointment of an examiner is mandatory

under 11 U.S.C. § 1104(c)(2) because the Debtors' fixed, liquidated, unsecured debts to its customers alone far exceed section 1104(c)(2)'s $5 million threshold." (*Id.* at 2.)  Notably, the U.S. Trustee did not propose a scope for the examiner's investigation in the Examiner Motion.  In colloquy at the Hearing, the U.S. Trustee suggested that the examiner's investigation could have no bounds.  (A86–89, Feb. 6, 2023 Hr'g Tr. 86:3–89:7.)  Certain state government agencies of Wisconsin, Vermont, and Texas filed joinders to the Examiner Motion.  (Bankr. Ct. ECF Nos. 263, 339, 600.)

On January 25, 2023, the FTX Debtors, the Committee, and the Joint Provisional Liquidators of FTX Digital Markets Ltd. each filed objections to the Examiner Motion.  (Bankr. Ct. ECF Nos. 571-73.)  On February 1, 2023, the U.S. Trustee filed his reply to the filed objections.  (Bankr. Ct. ECF No. 601.)

### C.    The Examiner Motion Hearing

On February 6, 2023, the Bankruptcy Court held a hearing on the Examiner Motion (the "Hearing").  The U.S. Trustee offered no witnesses in support of the Examiner Motion.

The Bankruptcy Court heard extensive, uncontroverted testimony at the Hearing from the FTX Debtors' new CEO and Chief Restructuring Officer, John J. Ray, III.  Mr. Ray testified that based on his personal experience managing the debtors in the *Enron*, *Residential Capital*, *Nortel*, and *Overseas Shipholding*

bankruptcies, it was his view that examiner reports generally failed to provide benefit to the estate commensurate with their enormous costs of $100 million or more. (A40–43, Feb. 6. 2023 Hr'g Tr. at 40:1–43:15.)

Among other things, Mr. Ray also offered uncontradicted testimony about the scope of the ongoing investigations being conducted by the FTX Debtors and the Committee in furtherance of maximizing recoveries to creditors while at the same time dedicating significant resources to cooperate with requests for information from the United States Congress and numerous law enforcement and regulators around the world—all of whom are conducting investigations. (A53–56, *id.* at 53:17–56:14.)   Mr. Ray further testified that permitting an examiner and supporting professionals access to the FTX Debtors' sensitive computing environment would expose the FTX Debtors to unwarranted cybersecurity risks. (A66–67, *id.* at 66:14–67:9.)

### D.    The Bankruptcy Court Denies the Examiner Motion

On February 15, 2023, the Bankruptcy Court issued a bench ruling denying the Examiner Motion (the "Bench Ruling").  It credited the FTX Debtors' evidence and the Appellees' arguments, and made a number of factual findings that led to the conclusion that appointment of an examiner was not in the creditors' best interests.   The Bankruptcy Court determined that there was "no question" that Mr. Ray and the FTX Debtors' new Board of Directors are "completely

independent," and that they had retained "highly qualified" professionals to investigate and assist with the asset recovery efforts. (*See* A145–146, Bench Ruling at 7:16–8:18.) The Bankruptcy Court noted that "[a]ll prior senior management of the debtors were removed" by Mr. Ray's team, to ensure new management's impartiality. (A146, *id.* at 8:6–9.) The Bankruptcy Court found that the FTX Debtors' team was "fully capable of conducting a thorough investigation." (A152, *id.* at 14:16–17.) The Bankruptcy Court further found that the cost of an examiner "would be in the tens of millions of dollars and would likely exceed $100 million," imposing "exponential cost to the estate which would have to be borne by the creditors." (A147, *id.* at 9:17–24.) The Bankruptcy Court determined an examiner would be duplicative of the "multiple investigations underway" and, accordingly, "[r]equiring creditors to bear the burden of yet another investigation does not comport with the requirements of Section 1104(c)." (A148, *id.* at 10:6–14.)

The Bankruptcy Court further noted that in this case, there were "no secured creditors . . . only unsecured creditors," who had through the Committee objected to the appointment of an examiner. (A153, *id.* at 15:7–8.) The Bankruptcy Court also credited the "uncontroverted testimony" that appointing an examiner would increase the cybersecurity "risk of further loss through inadvertent disclosures or hacking." (A153, *id.* at 15:14–20.) As a result, the Bankruptcy Court denied the

U.S. Trustee's request to appoint an examiner pursuant to 11 U.S.C. § 1104(c)(1). (A148, *id.* at 10:6–14.)

The Bankruptcy Court also denied the request to appoint an examiner pursuant to 11 U.S.C. § 1104(c)(2) in reliance on the same evidence.  In doing so, the Bankruptcy Court rejected the U.S. Trustee's argument that it is divested of any discretion as to whether to appoint an examiner if the debt threshold of $5 million is exceeded, noting that the out-of-circuit cases cited by the U.S. Trustee "ignore the additional language of [section] 1104 that states:  '[t]o conduct such an investigation of the debtors as is appropriate'" (A149, *id.* at 11:16–18), while other courts, "including every bankruptcy judge in this district to consider the issue has concluded that there is discretion" (A150, *id.* at 12:16–17) because "the as appropriate language in [section] 1104(c) permits a Bankruptcy Court to deny the appointment of an examiner in limited circumstances even if the debtor meets the debt requirements of (c)(2)." (A150, *id.* at 12:2–5.)   Ultimately, the Bankruptcy Court concluded that "[g]iven the facts and circumstances of this highly unique case I have no doubt that the appointment of an examiner would not be in the best interests of the creditors." (A148, *id.* at 10:6–8.)

On February 21, 2023, the Bankruptcy Court entered its *Order Denying the Motion for the Appointment of an Examiner* (the "Order").  (A171–72.)  The U.S.

Trustee filed his *Notice of Appeal and Statement of Election* on March 6, 2023. (Bankr. Ct. ECF No. 805.)

### E.    The District Court Certifies the Appeal

On April 6, 2023, the U.S. Trustee moved in the district court to certify the Order for direct appeal to this Court pursuant to 28 U.S.C. § 158(d)(2). (Dist. Ct. ECF No. 14.) The U.S. Trustee argued that certification was appropriate because his appeal raised a legal question as to which there was no controlling precedent, the appeal involved a matter of public importance, and review would help resolve conflicting decisions. (*Id.* at 12–13.)

On May 30, 2023, the district court entered the Order certifying the appeal solely on the basis of "the first subpart of 28 U.S.C. § 158(d)(2)(A)(i)"—the existence of "a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court." (Dist. Ct. ECF No. 40.) The district court's memorandum opinion did not address any of the U.S. Trustee's other asserted bases for certification. (Dist. Ct. ECF No. 39.) The district court then issued a bench order denying the U.S. Trustee's motion to expedite consideration of the appeal as moot.

On June 14, the U.S. Trustee filed the instant *Petition for Permission for Direct Appeal of Order Issued by the United States Bankruptcy Court for the District of Delaware* (the "<u>Petition</u>").

# **ARGUMENT**

**I.    The U.S. Trustee Has Provided No Basis to Justify the Extraordinary Relief of Direct Review**

While the district court felt it had "no choice" but to certify the appeal because there is no controlling decision of this Court on the legal issue presented, this Court "may in its discretion exercise, or decline to exercise, that jurisdiction." *Weber* v. *U.S. Tr.*, 484 F.3d 154, 157 (2d Cir. 2007) (citing 28 U.S.C. § 158(d)(2)(A) (permitting a direct appeal only "if the court of appeals authorizes the direct appeal of the judgment, order or decree")).  In deciding whether to directly review an issue, appellate courts *may* consider the section 158(d)(2) certification factors, as the U.S. Trustee encourages, but they are not controlling.  *Id.* at 161.  Appellate courts are, however, "most likely to exercise [their] discretion to permit a direct appeal where there is uncertainty in the bankruptcy courts . . . or where [they] find it patently obvious that the bankruptcy court's decision is either manifestly correct or incorrect . . . ."  *Id.*  "In many cases involving unsettled areas of bankruptcy law, review by the district court would be most helpful" because "[c]ourts of appeals benefit immensely from reviewing the efforts of the district court to resolve such questions."  *Id.* at 160; *see also In re Davis*, 512 F.3d 856, 858 (6th Cir. 2008) (declining to permit direct review).

There is no uncertainty among the bankruptcy courts of this circuit as to whether appointment of an examiner is mandatory simply because the debt

threshold of $5 million is exceeded. Those bankruptcy courts have repeatedly rejected the U.S. Trustee's argument, uniformly finding that section 1104(c)(2) affords bankruptcy courts the discretion to determine that no examiner investigation is appropriate—even when the debt threshold is met.[2] The U.S. Trustee cites only three *out-of-circuit* cases to show that there may be uncertainty in *other* courts. But section 158 does not require certification when there is an inter-circuit split of authority. This is for the simple reason that the Third Circuit is not able to resolve a conflict between itself and another circuit court—the only court with that power is the United States Supreme Court. *See In re Goody's Fam. Clothing, Inc.*, 2009 WL

---

[2] Hr'g Tr. at 40:5–7, *In re Mallinckrodt PLC*, No. 20-12522 (Bankr. D. Del. Nov. 22, 2021) (Dorsey, J.) (declining to appoint examiner notwithstanding satisfaction of debt threshold); Hr'g Tr. at 196:22–25; 197:3–5, *In re EV Energy Partners*, No. 18-10814 (Bankr. D. Del. May 16, 2018) (Sontchi, J.) (same); Hr'g Tr. at 7:16–19, *In re Paddock Enters., LLC*, No. 20-10028 (Bankr. D. Del. June 17, 2020) (Silverstein, J.) (A585-87) (same); Hr'g Tr. at 170:13–20, *In re Visteon Corp.*, No. 09-11786 (Bankr. D. Del. May 12, 2010) (Sontchi, J.) (same); *In re Spansion, Inc.*, 426 B.R. 114, 127 (Bankr. D. Del. 2010) (same); Hr'g Tr. 31:18–22, *In re HSH Del. GP LLC*, No. 10-10187 (Bankr. D. Del. Apr. 23, 2010) (Walrath, J.) (same); Hr'g Tr. 13:4–14:14; 14:22–23, *In re Magna Entm't. Corp.*, No. 09-10720 (Bankr. D. Del. Apr. 20, 2010) (Walrath, J.) (A607-12) (same); Hr'g Tr. 45:8–14, *In re IdleAire Techs. Corp.*, No. 08-10960 (Bankr. D. Del. June 13, 2008) (Gross, J.) (A613-19) (same); Hr'g Tr. 76:9–16; 77:19–22, *In re Am. Home Mortg. Holdings, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del. Oct. 31, 2007) (Sontchi, J.) (same); Hr'g Tr. 23:16–18, *In re SA Telecomms., Inc.*, Nos. 97-2395 to 97-2401 (Bankr. D. Del. Mar. 27, 1998) (Walsh, J.) (same; "[T]his Court has for years consistently viewed [section] 1104(c)(2) as not being a mandatory provision."); Hr'g Tr. 44:12–21, *In re Webcraft Techs., Inc.*, No. 93-1210 (Bankr. D. Del. Nov. 4, 1993) (Balick, J.) (same).

2355705, at *2 (D. Del. July 30, 2009). Rather, courts in this circuit have found that certification should be denied where "no split of authority exists *within the Third Circuit.*" *Id.* (emphasis added); *Aerogroup Int'l*, 2020 WL 757892, at *4 (D. Del. Feb. 14, 2020) (denying certification and collecting cases). Put simply, "inter-circuit splits do not satisfy section 158(d)(2)." *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 714 (Bankr. D. Del. 2016) (collecting cases). Certainly, this Court is not required to exercise its jurisdiction on that basis.

Similarly, the U.S. Trustee does not demonstrate that the Bankruptcy Court's Bench Ruling is manifestly incorrect. Nor could he because the Bankruptcy Court's ruling is consistent with the longstanding view of courts both inside and outside of this circuit.[3] *Weber*, 484 F.3d at 161 (declining to hear direct appeal where "all three of the courts within this circuit to have considered the question" have reached the same conclusion). This Court may, of course, ultimately conclude that that all of the bankruptcy courts are wrong. But it should only do so after the district court has had an opportunity to consider the statutory language and provide its analysis of the issue in the ordinary course. *See Weber*, 484 F.3d at 160 (noting that

---

[3]  For example, the prevailing view in the reported cases of the Southern District of New York's bankruptcy courts is consistent with the Delaware bankruptcy courts' view that there is discretion when considering whether to appoint an examiner. *See, e.g.*, *In re Residential Capital, LLC*, 474 B.R. 112, 120–21 (Bankr. S.D.N.Y. 2012); *In re Dewey & LeBoeuf LLP*, 478 B.R. 627, 639 (Bankr. S.D.N.Y. 2012).

implicit in section 158(d)(2) is Congress's "recognition of the salutary effects of allowing some cases to percolate through the normal channels"). This Court should exercise its discretion to deny the extraordinary request for immediate direct review.

## II. Mechanical Application of Section 158(d)(2) Does Not Require This Court to Accept the Direct Appeal

As noted, this Court may choose to consider the certification factors set forth in section 158(d)(2)(A) in evaluating the Petition. As the petitioner, the U.S. Trustee bears the burden of proof. *See, e.g.*, *In re Am. Home Mortg. Inv. Corp.*, 408 B.R. 42, 43–44 (D. Del. 2009) (placing burden on movant to "raise[] . . . issues . . . directly linked to the Bankruptcy Court decision," "identif[y] conflicting decisions," and "persuade[]" the court of the public importance of the case); *In re Conex Holdings, LLC*, 534 B.R. 606, 610–612 (D. Del. 2015) (denying certification because appellant's arguments were insufficient). The U.S. Trustee advances two arguments in support of his petition: (1) that his appeal involves a question of law for which there is no controlling decision by this Court; and (2) that his appeal involves a matter of public importance. (Pet. at 10-18.) He also states in conclusory fashion that his appeal is "time-sensitive," without substantiating that assertion. None of these arguments provide a basis for this Court to grant direct review.

## A.    The Mere Existence of a Pure Question of Law Does Not Require Direct Circuit Court Intervention.

The U.S. Trustee argues that "this appeal involves a pure question of law 'as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States.'" (Pet. at 12.)  Other than identifying this circumstance, the U.S. Trustee does not provide any basis for direct certification. As explained above, this alone does not require this Court to exercise its jurisdiction to accept a direct appeal because it retains sole discretion whether to hear certified appeals.  Thus, the U.S. Trustee has failed to carry the burden to establish that a decision directly from this Court in this appeal will either resolve uncertainty amongst the bankruptcy courts in this district or improve judicial economy.  *See Weber*, 484 F.3d at 161.

The U.S. Trustee instead prematurely argues the flawed merits of his position to this Court.  That is inadequate.  *See, e.g., In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *5 (declining to certify appeal where the court agreed with appellee that appellant's section 158 arguments were "nothing more than a rehash of [appellant]'s position on the merits").  That said, as the Appellees explain fully in their merits briefing before the district court, the "as is appropriate" language only comports with the statutory scheme of sections 1104 and 1106 if it affords the court discretion to appoint an examiner, and that reading does not render section 1104(c)(2) superfluous.  Appellees' statutory interpretation is consistent with the

-15-

conclusion reached by every single bankruptcy court in Delaware to analyze the issue.

Furthermore, direct review of this appeal would not advance judicial economy. As the U.S. Trustee acknowledges, "[p]roceedings in the underlying bankruptcy have remained ongoing while this appeal is pending." (Pet. at 18.) The Chapter 11 Cases are advancing, and progress is being made every day towards resolving the Chapter 11 Cases and returning value to creditors. The FTX Debtors' continued progress is not reliant on resolution of the legal question the U.S. Trustee is appealing. Assuming *arguendo* that it is ultimately determined the appointment of an examiner is mandatory in this case, the only remedy would be remand to the Bankruptcy Court to determine the scope and budget for any examination. But the Bankruptcy Court has already determined based on evidence presented that any investigation would be duplicative with those being conducted by the FTX Debtors, the Committee, and state and federal law enforcement and regulatory authorities. The U.S. Trustee decided not to challenge those findings on appeal.

The results of the ongoing investigations are being released publicly. For example, on April 9, 2023, the FTX Debtors released a First Interim Report on control failures by the FTX Debtors' previous management team. (Bankr. Ct. ECF No. 1242.) On June 26, 2023, the FTX Debtors released a Second Interim Report detailing the comingling and misuse of customer deposits at FTX.com (Bankr. Ct.

ECF No. 1704), and will soon be releasing additional reports. In other words, whether this Court considers this appeal now or after the district court has done so, the course of the Chapter 11 Cases remains the same. There is no increased judicial economy from immediate direct review by this Court.

Therefore, this Court should maintain the normal process for bankruptcy appeals and have the district court first consider the U.S. Trustee's appeal.

**B.     The U.S. Trustee Fails to Establish That Appointment of an Examiner in This Case Is a Matter of Public Importance.**

The U.S. Trustee additionally argues that direct review is "warranted because the question implicates 'matter[s] of public importance.'" (Pet. at 15.) But the U.S. Trustee provides no record evidence to support that argument. Courts interpret "public importance" in this context "narrowly." *In re Nortel Networks Corp.*, 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010). "The bar for certification under [the public importance] standard should be set high." 1 COLLIER ON BANKRUPTCY ¶ 5.06 (Alan R. Resnick & Henry J. Sommer eds., 16th ed. 2022). That an appellant calls its issue on appeal one of "public importance" does not make it so. *See, e.g.*, *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 715–16 (Bankr. D. Del. 2016) (even so-called "public policy issue" of "third-party releases [which was] in no way inconsequential and [was] unqualifiedly important," and likely to recur, nevertheless did "not rise to the level of public importance").

The district court did not endorse the U.S. Trustee's public importance arguments when certifying the appeal.  This Court should reject them.  After noting the size of the FTX Debtors' cases, the U.S. Trustee vaguely argues that an examiner report could "help" reveal "wrongdoing within FTX" and "may" inform unspecific "policy responses related to the wider cryptocurrency industry."  (Pet. at 16.)  But any public interest in "wrongdoing within FTX" writ large speaks to general interest in the Chapter 11 Cases, not public interest in the narrow issue presented by this appeal.

The U.S. Trustee does not identify a single decision from any court supporting the proposition that the public's broad interest in *an entire case* warrants direct appellate review.  Instead, public importance arises where the outcome *of a specific dispute* attracts "substantial public scrutiny."  *In re Nortel Networks Inc.*, 2016 WL 2899225, at *5 (D. Del. May 17, 2016).  The U.S. Trustee does not attempt to explain how resolving whether the appointment of an examiner is at all times mandatory under 11 U.S.C. § 1104(c)(2) is of public importance to the to FTX Debtors—particularly in light of the Bankruptcy Court's unchallenged factual findings.  Indeed, the best proxy for the public in this case is the Committee, which acts as fiduciary for the millions of unsecured creditors who bear the principal financial stake in the Chapter 11 cases. But the Committee opposed—and continues to oppose—the appointment of an examiner.

The U.S. Trustee also fails to articulate why the denial of the request for an examiner in this case, consistent with the positon of the FTX Debtors, the Committee, and all economic stakeholders, has any broader public importance. The only argument offered is a timid suggestion that the appointment of an examiner might "inform policy responses." (Pet. at 16.) The U.S. Trustee cites just one out-of-circuit lower court case in support of that proposition, *In re Qimonda AG*, 470 B.R. 374 (E.D. Va. 2012). But in *Qimonda*, the bankruptcy court had expressly found that applying the at-issue statute would likely "splinter" or "shatter" the debtor's patent portfolio—and by extension, the patent portfolios of other similarly situated parties. *Id.* at 378 (quoting *In re Qimonda AG*, 2009 WL 4060083, at *2 (Bankr. E.D. Va. Nov. 19, 2009)). On the basis of those findings, the district court was able to conclude that the appeal would have "substantial ramifications" for "businesses in any industry that heavily rely on patent licensing agreements." *Id.* at 388. Here, the Bankruptcy Court made no findings even suggesting that appointing an examiner would have any broader ramifications at all, aside from squandering the FTX Debtors' estates resources.

Courts frequently reject any appellant's "attempt to manufacture an issue of public importance by contending that the public at large must share [its own] concern regarding" the issue on appeal. *In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *5. Doing so is especially appropriate where, as here, the appellant offers

no explanation for how direct appeal would significantly advance jurisprudence. *See id.*; *see also In re Trib. Co.*, 477 B.R. 465, 472 (Bankr. D. Del. 2012) (declining to find an issue one of "public importance" simply because appellant claimed it was "a matter of concern to the public markets"). If generalized policy concerns elevated an issue to the level of "public importance," the U.S. Trustee would have an automatic direct appeal in many cases. Section 158 does not reflect Congress having that broad intent.

The Petition is nothing more than an effort by the U.S. Trustee—a party with no economic stake in these Chapter 11 Cases—to "achieve [its] own agenda" at the expense of the FTX Debtors' estates and creditors, which "weighs heavily against certification." *In re Nortel Networks Corp.*, 2010 WL 1172642, at *2 (denying motion for certification). This posture weighs even greater against this Court agreeing to immediately exercise its jurisdiction. The issue on appeal is not one of "public importance," and the U.S. Trustee's argument that section 158(d)(2)(A)(i) provides a basis for this Court's direct review fails.

## III.    Expedited Briefing and Argument Is Inappropriate

Finally, if this Court decides to permit an immediate appeal, it should deny the Petition insofar as it seeks expedited briefing and argument. The U.S. Trustee moved both the bankruptcy and district courts to expedite his appeal (Bankr. Ct. ECF No. 1143, Dist. Ct. ECF No. 17), but neither court granted those

motions.  The Bankruptcy Court denied the motion, and the district court declined to rule on the U.S. Trustee's motion to expedite for nearly two months before denying it as moot.  The U.S. Trustee speculates that appointing an examiner might somehow "benefit the preparation of a chapter 11 plan." (Pet. at 18.)  However, the only facts this Court may consider are those properly determined by the Bankruptcy Court and in the record of this appeal, all of which indicate that appointing an examiner would be harmful to these Chapter 11 Cases and to the creditors of the FTX Debtors' estates.  Even if this Court agrees to directly review this appeal, it should deny expedited briefing.

## CONCLUSION

For the foregoing reasons, the U.S. Trustee's Certification Petition should be denied.

Dated:  June 26, 2023
        Wilmington, Delaware

**LANDIS RATH & COBB LLP**

 /s/ Adam G. Landis
Adam G. Landis (No. 3407)
Matthew R. Pierce (No. 5946)
919 Market Street, Suite 1800
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
       pierce@lrclaw.com


 -and-

**SULLIVAN & CROMWELL LLP**
Andrew G. Dietderich
James L. Bromley
Brian D. Glueckstein
125 Broad Street
New York, NY 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588
E-mail: dietdericha@sullcrom.com
        bromleyj@sullcrom.com
        gluecksteinb@sullcrom.com


*Counsel for the Appellees FTX Debtors
and Debtors-in-Possession*

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**

 /s/ Robert F. Poppiti, Jr.
Matthew B. Lunn (No. 4119)
Robert F. Poppiti, Jr. (No. 5052)
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-6600
Email:  mlunn@ycst.com
        rpoppiti@ycst.com

**PAUL HASTINGS LLP**
Kristopher M. Hansen
Kenneth Pasquale
Isaac S. Sasson
John F. Iaffaldano
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile:  (212) 319-4090
Email: krishansen@paulhastings.com
       kenpasquale@paulhastings.com
       isaacsasson@paulhastings.com
       jackiaffaldano@paulhastings.com


*Counsel for the Appellee the Official
Committee of Unsecured Creditors of
FTX Trading Ltd. et al.*

## CERTIFICATION OF COMPLIANCE

The foregoing brief complies with Federal Rule of Appellate Procedure 27(d) because it was prepared using Microsoft Word in 14-point Times New Roman font, and contains 5,051 words.


*/s/ Adam G. Landis*
Adam G. Landis