No. 23-8029

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

In re FTX TRADING LTD., *et al.*,

*Debtors.*

ANDREW R. VARA, United States Trustee for Regions Three and Nine,

*Petitioner*,

v.

FTX TRADING LTD., *et al.*,

*Respondents.*

## REPLY IN SUPPORT OF PETITION FOR PERMISSION FOR DIRECT APPEAL OF ORDER ISSUED BY THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE

*Of Counsel:*

RAMONA D. ELLIOTT
   *Deputy Director/General Counsel*

P. MATTHEW SUTKO
   *Associate General Counsel*

FREDERICK GASTON HALL
SUMI K. SAKATA
   *Trial Attorneys*
   *U.S. Department of Justice*
   *Executive Office for U.S. Trustees*

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney General*

MARK B. STERN
ANNA O. MOHAN
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7533*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue, NW*
   *Washington, DC 20530*
   *(202) 305-1754*

## INTRODUCTION

This Court should grant the U.S. Trustee's petition for permission to directly appeal the bankruptcy court's order denying the U.S. Trustee's request for the appointment of an examiner. While this Court has discretion to determine whether to authorize a direct appeal, courts of appeals routinely consider the circumstances listed in 28 U.S.C. § 158(d)(2)(A) to guide the exercise of that discretion. *See Weber v. U.S. Tr.*, 484 F.3d 154, 157-62 (2d Cir. 2007) (considering criteria listed in 28 U.S.C. § 158(d)(2) in determining whether to grant petition for direct appeal); *In re Wright*, 492 F.3d 829, 831-32 (7th Cir. 2007) (same); *Blausey v. U.S. Tr.*, 552 F.3d 1124, 1131-32 (9th Cir. 2009) (per curiam) (same). The U.S. Trustee has explained why several of those circumstances apply here and why if this Court authorizes direct appeal, it should set an expedited briefing schedule. *See* Pet. 11-19. Respondents' contentions that this Court should nevertheless decline to accept the petition are without basis.

## ARGUMENT

**A.** The first criterion courts generally look to in considering whether to authorize direct appeal is whether the order "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States." 28 U.S.C. § 158(d)(2)(A)(i). Respondents do not contest that the question presented in this appeal—whether 11 U.S.C. § 1104(c)(2) requires the appointment of an examiner if the statutory requirements are satisfied—is a pure question of law. And unlike the cases on which they rely, respondents fail to

identify any controlling Third Circuit or Supreme Court opinion that resolves that question. *See, e.g., In re Goody's Family Clothing, Inc.*, No. 09-409, 2009 WL 2355705, at *2 (D. Del. July 30, 2009) (explaining that "controlling decisions of the U.S. Supreme Court and the Third Circuit admit of no ambiguity in resolving" the question presented); *In re Aerogroup Int'l, Inc.*, No. 19-648, 2020 WL 757892, at *3 (D. Del. Feb. 14, 2020) (recounting petitioner's argument that the bankruptcy court's order "directly contradicts case law decided by … the Third Circuit" (quotation marks omitted)); *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 712 (Bankr. D. Del. 2016) ("I am persuaded that there is controlling law in this jurisdiction" on the question presented). It is thus undisputed that this appeal satisfies at least one condition in 28 U.S.C. § 158(d)(2)(A).

Respondents also acknowledge that the question presented has been the subject of conflicting court decisions. Opp'n 3, 12. Some district and bankruptcy courts have concluded, as the bankruptcy court did here, that section 1104(c)(2) preserves discretion for the bankruptcy court to deny the appointment of an examiner even when the statutory requirements are satisfied. *See* Opp'n 12 & n.2 (citing cases). Multiple other courts, including the Sixth Circuit, have reached the opposite result,

holding that section 1104(c)(2) mandates appointment of an examiner in those circumstances. *See In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir. 1990).[1]

Respondents nevertheless urge this Court to decline to authorize a direct appeal, observing that this Court's decision will not resolve the split among courts. Opp'n 11-15. It is surely correct that a ruling by one court of appeals cannot resolve a conflict between courts in other circuits. But that is not a prerequisite for direct appeal. Indeed, it is not even necessary that a court of appeals decision definitively resolve conflicting views of district courts and bankruptcy courts *within* the circuit. Congress authorized direct appeal either when the order "involves a question of law requiring resolution of conflicting decisions; or" when the order simply "involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court." 28 U.S.C. § 158(d)(2)(A)(i)-(ii). *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015) ("Unlike [28 U.S.C.] § 1292(b), which permits certification only when three enumerated factors suggesting importance are all present, [28 U.S.C.] § 158(d)(2) permits certification when any one of several such

---

[1] *See also, e.g.*, *Walton v. Cornerstone Ministries Invs., Inc.*, 398 B.R. 77, 83-84 (N.D. Ga. 2008); *In re UAL Corp.*, 307 B.R. 80, 83-86 (Bankr. N.D. Ill. 2004); *In re Loral Space & Commc'ns Ltd.*, No. 04 Civ. 8645RPP, 2004 WL 2979785, at *4 (S.D.N.Y. Dec. 23, 2004); *In re Vision Dev. Grp. of Broward Cty., LLC*, No. 07-17778-BKC-RBR, 2008 WL 2676827, at *3 (Bankr. S.D. Fla. June 30, 2008); *In re Big Rivers Elec. Corp.*, 213 B.R. 962, 965-66 (Bankr. W.D. Ky. 1997); *Mechem Fin. of Ohio, Inc.*, 92 B.R. 760, 761 (Bankr. N.D. Ohio 1988); *In re The Bible Speaks*, 74 B.R. 511, 514 (Bankr. D. Mass. 1987); *In re 1243 20th St., Inc.*, 6 B.R. 683, 685 n.3 (Bankr. D.C. 1980); *In re Lenihan*, 4 B.R. 209, 211 (Bankr. D.R.I. 1980).

factors exists, a distinction that allows a broader range of interlocutory decisions to make their way to the courts of appeals.").

As the Second Circuit has explained, one of the primary motivations for the enactment of 28 U.S.C. § 158(d)(2) "was widespread unhappiness at the paucity of settled bankruptcy-law precedent." *Weber v. U.S. Tr.*, 484 F.3d 154, 158 (2d Cir. 2007); *see also In re One2One Commc'ns, LLC*, 805 F.3d 428, 447 n.15 (3d Cir. 2015) (Krause, J., concurring) (recognizing that bankruptcy "caselaw has been plagued by indeterminacy" (quoting *In re Pacific Lumber Co.*, 584 F.3d 229, 242 (5th Cir. 2009))). "The House Report that accompanied [28 U.S.C. § 158(d)(2)] emphasized that 'decisions rendered by a district court as well as a bankruptcy appellate panel are generally not binding and lack stare decisis value.'" *Weber*, 484 F.3d at 158 (first quoting H.R. Rep. No. 109-31, at 148 (2005); and then citing H.R. Rep. No. 107-3, at 112 (2001) (similar)). In other words, the fact that a bankruptcy or district court has addressed a legal question does not guarantee that future district and bankruptcy courts—even in that same district—will answer the question in the same way. The resolution of a legal question by a court of appeals, in contrast, is binding on district and bankruptcy courts within that circuit, and on the court itself unless and until overruled en banc or by the Supreme Court. Direct appeal thus reduces the

4

indeterminacy in bankruptcy law by facilitating the creation of binding appellate precedent, regardless of whether that precedent resolves an intra-circuit split.[2]

Respondents are also wrong to contend that this Court should not resolve the question presented without the "benefit of the district court's review." Opp'n 3; *see also* Opp'n 11, 13. It is undisputed that section 1104(c)(2)'s statutory requirements are satisfied in this case, and resolution of the question presented is not dependent on the development of any other facts. This appeal therefore involves precisely the type of "discrete, controlling question of law" that Congress considered most appropriate for direct appeal. *Weber*, 484 F.3d at 158 (noting that "Congress did not expect that [28 U.S.C. § 158(d)(2)] would be used to facilitate direct appeal of 'fact-intensive issues,' but rather 'anticipated that ... [for such issues] district court judges or bankruptcy appellate panels' would suffice" (second and third alterations in original) (quoting H.R. Rep. No. 109-31, at 148-49)). And, as explained, the same question has been analyzed multiple times over the course of 40 years by bankruptcy courts, district courts, and another court of appeals. *See supra* pp. 2-3. There is thus no risk that

---

[2] That bankruptcy courts in the District of Delaware so far have agreed they retain some discretion under section 1104(c)(2) underscores the necessity of review by this Court. *Contra* Opp. 3. A key function of direct appeal is to provide a "'useful safety valve[] for promptly correcting serious errors' and addressing important legal questions." *Bullard*, 575 U.S. at 508 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)). If the U.S. Trustee is correct that section 1104(c)(2) mandates appointment of an examiner when its statutory requirements are satisfied, then courts in the district are routinely committing a serious legal error that must be promptly corrected.

"[p]ermitting direct appeal too readily might impede the development of a coherent body of bankruptcy case-law," as this Court already has the benefit of those courts' comprehensive efforts to resolve the question presented. *Weber*, 484 F.3d at 160; *see In re Davis*, 512 F.3d 856, 858 (6th Cir. 2008) (explaining that direct appeal may not be warranted when "percolation through the district court would cast more light on the issues and facilitate a wise and well-informed decision" (quoting *Weber*, 484 F.3d at 161)).

    **B.**  Our petition also explained why this case "involves a matter of public importance," 28 U.S.C. § 158(d)(2)(A)(i), confirming that direct appeal is warranted. *See* Pet. 15-17. Contrary to respondents' suggestion (Opp'n 18-20), that argument was not based solely on generalized policy concerns. Rather, the U.S. Trustee explained why "the narrow issue presented by this appeal," Opp'n 18—whether section 1104(c)(2) mandates appointment of an examiner when the statutory requirements are satisfied—is a question of public importance. Congress intended section 1104(c)(2) to serve as a form of "special protection" against corporate mismanagement for security holders in bankruptcies of "great public interest." Collier on Bankruptcy, App. pt. 4(f)(iii) (Richard Levin & Henry J. Sommer eds., 16th ed. 2023) (124 Cong. Rec. S17,404 (daily ed. Oct. 6, 1978)). Ensuring that bankruptcy courts correctly apply section 1104(c)(2) is thus an issue of public importance, and the failure to appoint an examiner when the statutory conditions are satisfied undermines precisely the protections Congress deemed necessary. The size of the FTX bankruptcy and the

rampant allegations of fraud and mismanagement within the company only underscore the importance of ensuring that an examiner is appointed in this particular bankruptcy.

The many court decisions addressing this question, *see supra* pp. 2-3, also demonstrate that examiner-appointment issues under section 1104(c)(2) arise frequently in chapter 11 bankruptcies across the country. As cases cited by respondents recognize, an order satisfies the "public importance" prong of 28 U.S.C. § 158(d)(2)(A)(i) where, as here, the issue on appeal "transcend[s] the litigants and involves a legal question the resolution of which will advance the cause of jurisprudence to a degree that is usually not the case." *In re Nortel Networks Corp.*, No. 09-10138(KG), 2010 WL 1172642, at *2 (Bankr. D. Del. Mar. 18, 2010) (quoting *In re American Home Mortg. Inv. Corp.*, 408 B.R. 42, 44 (D. Del. 2009)); *In re Aerogroup Int'l, Inc.*, 2020 WL 757892, at *5 (same); *see also In re Wright*, 492 F.3d 829, 831 (7th Cir. 2007) (explaining that motions panel accepted direct appeal, in part, because "the issue not only has divided the bankruptcy courts but also arises in a large fraction of all consumer bankruptcy proceedings").

Respondents come to grips with none of these concerns and instead characterize the U.S. Trustee as advancing a "policy crusade to divest bankruptcy courts of discretion to decide whether an examiner is appropriate under the specific circumstances of a chapter 11 case." Opp'n 2; *see also* Opp'n 20 (describing the petition as an effort by the U.S. Trustee to "achieve its own agenda at the expense of

the FTX Debtors' estates and creditors" (alteration omitted) (quotation marks omitted)). That accusation fundamentally misunderstands both the text of section 1104(c)(2) and the role of the U.S. Trustee in the bankruptcy system. Congress established the office of the U.S. Trustee to aid in the administration of bankruptcy cases and to eliminate the appearance of bias that existed in the previous court-supervised system. *See In re Revco*, 898 F.2d at 500 (citing H.R. Rep. No. 95-595, at 88-99 (1977)). The U.S. Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena," H.R. Rep. No. 95-595, at 88, and they ultimately are responsible for "protecting the public interest and ensuring that bankruptcy cases are conducted according to law," *id.* at 109; *see In re Revco*, 898 F.2d at 500. Those are the sole interests the U.S. Trustee has pursued in this case.

**C.** If this Court authorizes direct appeal, this Court should set an expedited briefing schedule as outlined in the petition. *See* Pet. 17-18. The U.S. Trustee has described how section 1104(c), in recognition of the impact an examiner's work can have on the preparation of a chapter 11 plan, makes the timing of plan confirmation critical to the examiner's appointment. *See* 11 U.S.C. § 1104(c) (providing for appointment of examiner, upon request, "at any time before the confirmation of a plan"); *see* Pet. 18-19. Expedited resolution of this appeal is thus necessary to ensure that an examiner can be appointed before plan confirmation, which is projected to occur by the second quarter of 2024. Respondents do not dispute the relevance of plan confirmation for purposes of section 1104(c). Nor do respondents identify any

prejudice they will suffer if their time for filing a response brief is shortened by ten days, particularly given they already have filed a merits brief in the district court. There is no basis for requiring the U.S. Trustee to adduce any more evidence that expedited briefing is warranted.

## CONCLUSION

For the foregoing reasons, this Court should grant the U.S. Trustee's petition for permission to directly appeal under 28 U.S.C. § 158(d)(2) the bankruptcy court order certified by the district court on May 30, 2023. In the event this relief is granted, this Court should grant the proposed expedited schedule set forth in the U.S. Trustee's petition.

*Of Counsel:*

RAMONA D. ELLIOTT
  *Deputy Director/General Counsel*

P. MATTHEW SUTKO
  *Associate General Counsel*

FREDERICK G. HALL
SUMI K. SAKATA
  *Trial Attorneys*
  *U.S. Department of Justice*
  *Executive Office for U.S. Trustees*

JULY 2023

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MARK B. STERN
 /s/ Anna O. Mohan
ANNA O. MOHAN
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7533*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-1754*

## COMBINED CERTIFICATION

1. Government counsel are not required to be members of this Court's bar.

2. This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because, excluding parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 2,238 words. This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

3. On July 3, 2023, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system.

4. The text of the electronic version of this document is identical to the text of the hard copies that will be provided.

5. This document was scanned for viruses using CrowdStrike Falcon Sensor and no virus was detected.

                                                 /s/ *Anna O. Mohan*
                                                 ANNA O. MOHAN
                                                 Counsel for the U.S. Trustee